UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
------------------------------------------------------------  x

BRENDA LEUZZI and GEORGE LEUZZI,  :

                    Plaintiffs,  :      **6:14-CV-6218 (DGL)(JWF)**

       -against-  :

ETHICON INC., ETHICON ENDO SURGERY,  :     **STIPULATION AND [PROPOSED]**
INC., ETHICON WOMEN'S HEALTH AND           **ORDER REGARDING DOCUMENT**
UROLOGY, a division of ETHICON, INC. and :     **PRODUCTION FORMAT**
ABC CORPORATIONS 1-10 and JOHN DOES 1-
10 and JANE DOES 1-10,  :

                    Defendants.  :

   :

------------------------------------------------------------  x

       To secure a "just, speedy, and inexpensive determination" of this action, as required by Federal Rule of Civil Procedure 1, the Parties to this action, by and through their undersigned attorneys, hereby agree and stipulate to the following protocol for the production of all electronic information and papers documents in this action:

**I.    GENERAL TERMS**

    A.    Electronically stored information ("ESI") will be part of the discoverable material in this case and the parties agree to cooperatively exchange in reasonably usable form as described below non-privileged discoverable material and use reasonable and proportional efforts to identify, preserve, collect, and produce relevant information.

    B.    In keeping with proportional and cost-effective discovery, the parties agree to identify appropriate limits to discovery, including limits on custodians, data sources, subject matters relevant to the claims and defenses and the relevant time period and other parameters to limit and guide and preservation and production of discoverable information.

    C.    To further the application of the Fed. R. Civ. P. 26(b)(2)(C) proportionality standard in discovery, requests for production of ESI and related responses should be reasonably targeted, clear, and as specific as practicable.

    D.    Costs shall be shifted for disproportionate ESI production requests pursuant to Federal Rule of Civil Procedure 26. A party's nonresponsive or dilatory discovery tactics will be considered in cost-shifting determinations. Likewise, a party's meaningful compliance with this Order and efforts to promote efficiency and reduce costs will be considered in cost-shifting determinations.

  E.  General ESI production requests under Federal Rules of Civil Procedure 34 and 45 shall not include email or other forms of electronic correspondence (collectively "email"). To obtain email, parties must propound specific email production requests. Email production requests shall only be propounded for specific issues, rather than general discovery of a product or business.

  F. Having considered the claims and defenses in this action, the parties agree the following categories of ESI need not be preserved:

    1. Unallocated, slack space, deleted data, file fragments, or other data accessible by use of computer forensics;

    2. Random access memory (RAM), temporary files, or other ephemeral data that is difficult to preserve;

    3. Data relating to online access, such as temporary internet files, browser history, file or memory caches and cookies;

    4. Data in metadata fields that are frequently updated automatically as part of the usual operation of a software application, operating system or network (e.g., date last opened);

    5. Backup or archived data that is substantially duplicative of data that is more reasonably accessible elsewhere;

    6. Telephone or VOIP voice messages unless they are transcribed in the ordinary course of business;

    7. Instant messages that are not regularly stored or saved on a server;

    8. Data stored on mobile devices, cell phones or blackberry devices, absent a showing of good cause that such preservation is warranted;

    9. Logs of calls made from mobile devices, cell phones or blackberry devices;

    10. Operating system files, executable files, network, server, or system logs;

    11. Data from systems that are no longer in use ("Legacy Data") that is unreadable or unintelligible on current systems;

    12. Electronic data temporarily stored by laboratory equipment or attached electronic equipment, provided that such data is not ordinarily preserved as part of a report.

  G. Absent a showing of good cause, no party need restore any form of media upon which backup data is maintained in a party's normal or allowed processes, including but not limited to backup tapes, disks, SAN, and other forms of media, to comply with its discovery obligations in the present case.

## II.    DEFINITIONS

A.    "Document" means paper documents or electronically stored information (ESI) existing in any medium from which information can be obtained or translated into reasonably usable form.

B.    "Native File(s)" means ESI in the file type for (or of) the application in which such ESI is normally created, viewed and/or modified

C.    "Metadata" means: (i) information embedded in a Native File that is not ordinarily viewable or printable from the application that generated, edited, or modified such Native File; and (ii) information generated automatically by the operation of a computer or other information technology system when a Native File is created, modified, transmitted, deleted or otherwise manipulated by a user of such system.

D.    "Static Image(s)" means a representation of ESI produced by converting a Native File into a standard image format capable of being viewed and printed on standard computer systems. A Tagged Image File Format (TIFF) image is an example of a Static Image.

E.    "Load/Unitization file" means an electronic file containing information identifying a set of paper-scanned images or electronically processed files and indicating where individual pages or files belong together as documents, including attachments, and where each document begins and ends. A Load/Unitization file shall also contain data relevant to the individual documents, such as Metadata, coded data, and OCR or Extracted Text.

F.    "OCR" means the optical character recognition file which is created by software used in conjunction with a scanner that is capable of reading text- based documents and making such documents searchable using appropriate software.

G.    "Extracted Text" means the text extracted from a Native File and includes all header, footer and document body information as well as any other text, such as comments and tracked changes in Microsoft Word documents and notes in Microsoft PowerPoint documents.

## III.   PRODUCTION FORMAT

A.    In producing documents in the reasonably usable form described herein, the Parties shall use reasonable efforts to comply with the terms of this production format. In the event a party determines that it cannot materially comply with any requirement herein, it shall disclose its inability to comply and parties shall meet and confer regarding resolution of the identified issue.

   B.    <u>Paper Documents</u>

      1.    Paper documents shall be produced as TIFF images (consistent with the specifications in Section III.C.1 below). The production shall include the

appropriate Load/Unitization files which will, at a minimum, contain the following fields (described in TABLE 1):

   a.   Beginning Production Number (ProdBeg);

   b.   Ending Production Number (ProdEnd);

   c.   Beginning Attachment Production Number (BegAttach);

   d.   End Attachment Production Number (End Attach);

   e.   Custodian/Source;

   f.   Confidentiality;

   g.   Document Type;

   h.   Page Counts; and

   i.   OCR.TXT file.

2. In scanning paper documents, distinct documents shall not be merged into a single record, and single documents shall not be split into multiple records (i.e., paper documents should be logically unitized).

C. <u>ESI</u>

   1. **TIFF Format**: The Parties shall produce ESI in standard Group IV black and white single-page TIFF format at 300 x 300 dpi resolution and 8.5 x 11 inch page size, except for documents that in the producing party's reasonable judgment require a different resolution or page size.

      a. If a color image is produced in black and white, the receiving party, for good cause, may request the producing party to produce the original, color image. After receiving such a request for color production, the parties shall meet and confer on the reasonableness of the request as well as a reasonable and cost-effective means of providing the requested documents.

      b. In the absence of agreement of the parties or order of Court, a Static Image shall be provided in TIFF format (.TIF files). The image file name shall match the Bates number assigned to the image. All documents are to be provided with multi-page searchable OCR or Extracted Text files, as described in Section III.B.4 below.

   2. **Text Files**: For each document, a single text file shall be provided along with the image files and metadata. The text file name shall be the same as the Bates number of the first page of the document. File names shall not have any special characters or embedded spaces. Electronic text must be extracted

      directly from the native electronic file unless the document was redacted or a hard copy document. In these instances, a text file shall be created using OCR and shall be produced in lieu of extracted text.

3. **Bates Numbering:** All images must be assigned a Bates/control number that shall always: (1) be unique across the entire document production, (2) maintain a constant length (zero/0-padded) across the entire production, (3) contain no special characters or embedded spaces, (4) be sequential within a given document, (5) shall not obscure any underlying content on the images

4. **Replacement Files:** Any documents that are replaced in later productions shall be clearly designated as such, by appending a "- R" to the bates/production number-prefix and by a letter accompanying the production clearly designating such documents as replacements.

5. **Time Zone:** When processing ESI, GMT should be selected as the time zone. To the extent that a party has already processed ESI using a different time zone, the producing party shall note the time zone used in its processing.

6. **De-NISTing**: Electronic file collection shall be "De-NISTed", removing commercially available operating system and application files contained on the current NIST file list. Identification of NIST list matches shall be through MD5 Hash values.

7. **Deduplication:** The Parties may globally de-duplicate identical ESI as follows:

    a. **Electronic Files:** Electronic files shall be de-duplicated based upon calculated MD5 Hash values for binary file content. File contents only will be used for MD5 Hash value calculation.

    b. **Messaging Files:** Messaging files shall be de-duplicated based upon MD5 Hash values for the message family, including parent object and attachments. For families, the MD5 Hash is created on the combined hash values of the family members.  In the event that electronic correspondence is produced, electronic threading may be utilized.

    c. **Metadata:** The custodian metadata field of unproduced documents that are duplicates of produced documents shall be provided in the Load/Unitization file in either a multi-value CUSTODIAN field or as the OTHER CUSTODIANS field set forth in TABLE 1.

8. **Native Files:** The parties agree to produce non-redacted spreadsheets (.csv, .xls, .wks), Microsoft Access databases (.mdb), and Power Point presentations in native format. Documents that are redacted shall be produced as in a manner consistent with Paragraphs C.1 and C.2 above.

      a. Any native files that are produced shall be produced with all extracted text and applicable metadata fields set forth in TABLE 1.

9. **Load/Unitization files**: There shall be two Load/Unitization files accompanying all productions: one will be the Image Load File and the other will be the Metadata Load File. The specifics of these files are detailed in (a) and (b) below:

    a. <u>Image Load File</u>

        i. Every Document referenced in a production image load file shall have all corresponding images, text, and data logically grouped together in a directory structure with a common key to properly load the data.

        ii. Documents shall be produced in only one image load file throughout the productions, unless that document is noted as being a replacement document in the Replacement field of the data load file.

        iii. **Images will be delivered with an image load file in the Opticon (.OPT) file format.**

        iv. The name of the image load file shall mirror the name of the delivery volume(e.g., ABC001.opt). The volume names shall be consecutive (i.e., ABC001, ABC002, et. seq.)

        v. The load file shall contain one row per Tiff image.

        vi. Every image in the delivery volume shall be contained in the image load file.

        vii. The image key shall be named the same as the Bates number of the page. Load files shall not span across media (e.g., CDs, DVDs, Hard Drives, etc.), i.e., a separate volume shall be created for each piece of media delivered.

    b. <u>Metadata Load File</u>

        i. Metadata shall be provided in a Concordance-format delimited file with a .DAT file extension.

        ii. The metadata load file shall use Concordance default delimiters.

        iii. Data for documents shall be produced in only one data load file throughout the productions, unless that document is noted as being a replacement document in the Replacement field of the data load file.

    iv.    The first line of the .DAT file must be a header row identifying the field names.

    v.    All date fields shall be produced in "mm/dd/yyyy hh:mm:ss AM" format.

    vi.    A carriage-return line-feed shall be used to indicate the start of the next record.

    vii.    Load files shall not span across media (e.g., CDs, DVDs, Hard Drives, etc.); a separate volume shall be created for each piece of media delivered.

    viii.    The name of the metadata load file shall mirror the name of the delivery volume (i.e., ABC001.dat).

    ix.    The volume names shall be consecutive for each produced source. (i.e., ABC001, ABC002, et. seq.).

10.    **Metadata fields**: ESI shall be produced to the requesting party as Static Images together with a Load/Unitization file that contains the available Metadata fields described below on the document level, except as set forth in Section III.B above. If available and not privileged, the following fields associated with each electronic document including the body of the document, shall be produced in the appropriate Load/Unitization file:

### TABLE 1: Metadata Field List

| *Field Name* | *Description* | *Doc Type*[1] |
|---|---|---|
| BEGBATES | First Bates number of each document being produced | All |
| ENDBATES | Last Bates number of each document being produced | All |
| BATESRANGE | Full Bates Number range (production number) | All |
| PARENTBATES | Begin Bates number for the parent email of a family (will not be populated for documents that are not part of a family) | All |
| BEGATTACH | First Bates number of family range (will not be populated for documents that are not part of a family) | All |
| ENDATTACH | Last Bates number of family range (will not be populated for documents that are not part of a family) | All |
| CUSTODIAN | Name of person or data source (non-human) from where documents/files are produced. Where redundant names occur, individuals should be distinguished by an initial which is kept constant throughout productions (e.g., Smith, John A. and Smith, John B.) Department or organization name for non-electronic documents or | All |

---

[1] "Edocs", as used in TABLE 1, refers to all non-email ESI.

| *Field Name* | *Description* | *Doc Type[1]* |
|---|---|---|
| | documents that are accessible for editing by more than a single user on a shared network drive. | |
| FROM | Sender of an email | Email |
| TO | Addressee(s) of an email | Email |
| CC | Recipient(s) copied on an email | Email |
| BCC | Recipients blind copied on an email | Email |
| SUBJECT | Subject line of the email | Email |
| DATESENT (mm/dd/yyyy hh:mm:ss AM) | Date the email was sent | Email |
| AUTHOR | Author of document | Edocs |
| DATECREATE (mm/dd/yyyy hh:mm:ss AM) | Date the document was created | Edocs |
| DATELASTMOD (mm/dd/yyyy hh:mm:ss AM) | Date the document was last modified | Edocs |
| FILESIZE | Size of application file document/email in KB | All |
| FILEPATH | Email: Full file path where original email was stored<br>Edocs: Full file path where application file was stored | All |
| FILEEXT | File extension of the native file | Edocs |
| FILENAME | Name of the application file, including file extension | Edocs |
| PAGECOUNT | Number of pages of each individual document | All |
| DESIGNATION | Confidentiality designation assigned to the document pursuant to any confidentiality/protective order in the case | All |
| NATIVE FILE | Link to the native email or application file | All |
| HASHVALUE | Hash value of each email or application file | All |
| TEXT | File path for OCR or Extracted Text files | All |
| OTHER CUSTODIANS | Unless CUSTODIAN is a multi-value field, additional custodians who possessed a duplicate copy of an email or application file (if de-duping across custodians) | All |

11. **Embedded Objects:** Objects embedded in Microsoft Office and .RTF shall be extracted as separate documents and produced as attachments to the document.

12. **Compressed files:** Compression file types (i.e., .CAB, .GZ, .TAR. .Z, .ZIP) shall be decompressed in a reiterative manner to ensure that a zip within a zip is decompressed into the lowest possible compression resulting in individual folders and/or files.

13. **Suppressed Metadata:** The following metadata fields may be suppressed for documents produced with redactions: FILENAME, TITLE, and SUBJECT.

        If additional fields are redacted for privilege, these fields shall be identified on the privilege log.

## IV.    OTHER PROVISIONS

    A.    Productions need not include any indication of the document request(s) to which a document may be responsive.

    B.    A party may object to a request for production of ESI that is not reasonably accessible because of undue burden or cost.

    C.    If asserting an objection based on Section IV.B above, the responding party shall inform the requesting party of the electronic information it is willing to produce, the nature and location of the information claimed to not be reasonably accessible, the reason(s) why the requested production would impose an undue burden or is unreasonably costly, and afford the requesting party an opportunity to propose an alternative means of compliance with the request, including payment of all or part of the costs of retrieving the information.

    D.    The parties shall work with one another in good faith to resolve any issues, disputes or objections that arise in connection with electronic discovery issues before raising such matters with the court. Issues shall be raised promptly, in writing, and the parties shall have good faith discussions to attempt to resolve the matter. The parties shall use their best efforts to raise any objections or other requests related to a production within ninety (90) days of receipt of that production. In any event, the parties must raise any objections or other issues sufficiently in advance of the close of discovery to permit good faith negotiations to resolve the matter and briefing of any related motion such that the court has a reasonable time to rule thereon prior to the close of discovery.

    E.    The inadvertent production of any materials constituting or containing attorney-client privileged information, attorney work product, or confidential information shall be treated in the manner specified in the Protective Order entered in this case, the Federal Rules of Civil Procedure, and the Federal Rules of Evidence.

Dated: New York, New York
October 1, 2014

                                              Respectfully Submitted,

                                              */s/ Andres Alonso*

                                         Andres Alonso, Esq.
ALONSO KRANGLE LLP
445 Broad hollow Road, Suite 205
Melville, New York 11747
T: 516-350-5555
E: aalonso@alonsokrangle.com
*Attorney for Plaintiffs Brenda Leuzzi
and George Leuzzi*


                                             */s/ John D. Winter*

                                         John D. Winter, Esq.
  James F. Murdica, Esq.
PATTERSON BELKNAP WEBB & TYLER, LLP
1133 Avenue of the Americas
New York, NY 10036-6710
T: 212-336-2000
E: jwinter@pbwt.com
   jfmurdica@pbwt.com
*Attorneys for Defendant Ethicon, Inc.*


                                    SO ORDERED, this _____ day of

                                    _____, 2014.

                                    _____